The bill states that in 1803 the complainant purchased land and gave his bond for $250, having been an account against Buford for $130 which account being not present. Buford agreed to give credit for. That he afterwards presented the account to Buford, which he admitted to be correct, and promised to give credit for but never did. That in August. 1804, his wife tendered the balance, but Buford declined receiving it, having not as much use for it as the complainant had; but recognized the credit. That Buford assigned his bond to Edward Buford, who knew of the circumstances, but brought on an action upon the bond, and would recover the whole amount unless restrained by injunction. The bill is filed against James Buford, Spencer Buford, and Charles Buford, executors of James Buford, deceased. An injunction was awarded. It is not stated why he did not sue at law, nor why he did not plead a set-off. The executors all answer, and deny all the material parts of the bill. Click does not remember the presentation of the account when the bond was executed, but answering yes, to three leading questions, affirms that Buford then promised to give credit; he expects the testator knew the amount. Mr. Booker, who was present and drew the writings, does not remember this promise. George Andrews speaks of the admission of Edward Buford, acting as agent for his father, also, of admissions made by Spencer Buford on the 19th, 22d, and 25th of February, 1811; of Ragsdale's going to J. Buford's on the 28th, and of his precipitate retreat, and shutting the door, and states that Edward, and then Mabane, offered to purchase the account. John Andrews speaks of what happened on the 21st of *Page 193 
February, 1811. Edward told Ragsdale his father would not give credit. On the 25th he saw them at Mabane's, and confirms what is stated by George Andrews. Wallace speaks of the account presented to Spencer Buford in February, 1811, and of his admitting it to be all just but the sawing. Mabane says, all the Bufords denied the account, and that Ragsdale admitted he had not insisted on the account when the bond was executed, saying, if he had done so, the old man would not have let him have the land. Ragsdale, the witness, says that the complainant told him of the tender made by Ragsdale's wife, and that Buford refused because he wanted all. Samuel Long says, Buford, the testator, told him all the land was paid for but $60. Dodson and Hayley say the complainant mentioned that the testator disputed his just account of $60. Ragsdale did not present his account when the bond was given. The bill states that.
That Buford, the testator, then promised to give credit, is only proved by Click, which statement Ragsdale contradicts in his conversation with Mabane, to whom he states that he was then afraid to claim it. It is not remembered by Booker. Ragsdale, the witness, overturns the statement of Buford the testator, having recognized the credit when the money was tendered by the wife. He wanted all. And S. Long is contradicted by the bill, which admits all due but the $130, due by account, which he claims credit for. Long says, Buford told him all was paid but $60, and that he did not know whether he would claim that. Dodson and Hayley show the complainant's admissions, that the account was to the amount of $60 only. As to the admissions said to be made by Edward and S. Buford in the lifetime of the father, when they knew that he denied the account, they can not avail the complainant. They had no authority to make them. They must be laid out of the case. There is, *Page 194 
moreover, evidence on both sides relative to this point, which render the affirmative doubtful. Click saying that Buford promised to give credit, opposed by what Ragsdale said to Mabane assigning his reasons for not claiming the account when the bond was signed, is rendered doubtful thereby; and the more so by Booker's not recollecting it, though, as he drew the writings, it is probable he was informed of all the circumstances. The positive denial of this allegation by two of the defendants, who were present at the time, the Court does not rely on, for in no case is an answer replied to evidence against the plaintiff, whether his bill be sworn to or not. The answer which can not be replied to is evidence for the defendant. That is the case of an answer to a bill for discovery. The plaintiff knows that he will not be allowed to reply to it. His conduct in calling for the answer is an agreement to abide by it, as well where it turns out to be unfavorable as where it makes for him. Neither is more verity attributable to a bill sworn to, than to one which is not so. The oath of the plaintiff is required ad informandum conscientiam curiae, not for the purpose of making it evidence against his adversary who denies it. Were we to proceed on the evidence, it would not enable us to say the credit was promised to be given. But there is still a greater obstacle in the way; the suit at law, whilst it was yet depending, was stopped by injunction. Why did not the complainant plead payment? Why not offer to set off the account? he did not either the one or the other. The same evidence by which he could establish the fact here, would equally establish the same fact at law, and could be as easily presented there as here. Shall this court then take upon itself unnecessarily the province of a jury and decide the question which is properly to be determined by them? This ought never to be done, unless where matters are so circumstanced that a jury can not act with effect, owing to some *Page 195 
circumstance not under the control of the plaintiff. We are clearly of opinion that upon this ground alone the complainant is not yet in a situation to demand the interference of this court. It is argued that an unliquidated account can not be set off; if that were correct, he may still sue at law. But the position is not correct; unliquidated damages, to be ascertained by the discretion of a jury, can not be set off; but unliquidated damages to be assessed on pecuniary demands, as for goods sold and delivered, work and labor done, and in all cases whereindebitatus assumpsit will lie, may be set off. Cowper, 57; 2 Dall. 265; 6 Term Rep., 488; 2 Bl. 394. Correct reasoning alone would conduct us to this conclusion, and it is abundantly confirmed by authority. Cowper's Equity Pleading, 125; 6 Ves. 136; 4 Henning and Munford, 499.
Dismiss the complainant's bill with costs, and with directions that the time elapsed during the pendency of this bill in equity shall not be computed against the complainant, in any plea of the statute of limitations.
NOTE. — The following dicta in this case have been carried into our Digests: —
"In no case is an answer replied to evidence against the plaintiff, whether his bill be sworn to or not. The answer which can not be replied to, such as an answer to a bill of discovery, is evidence for the defendant. Neither is more verity attributable to a bill sworn to than to one which is not so."
The case, it will be noticed, was a bill for an injunction against the further prosecution of a suit at law, and was, doubtless, sworn to. The court may mean, by these loose dicta, that the pleadings of the parties are not strictly evidence, but when sworn to on both sides, merely ascertain the issues, which must be made out by the proof. The case of Searcy v. Pannell, Cooke, 110, was, doubtless, familiar to the court and counsel, and the argument at the bar may have turned upon the effect of pleadings thus sworn to, the evidence outside being, as the opinion shows, very conflicting. The court could scarcely have intended what their words seem, literally, to import. For, only a month or two previously, at Rogersville, in a case reported in this volume. Blair v. Brabson, 3 Hay., 18; they had held that, "A fact deposed to by one witness, in direct contradiction of a positive averment in the answer, and not corroborated by any circumstances, can not, by the rules which govern courts of equity, be considered as proved." The rules thus alluded to are, that where an answer is responsive to the bill, it is evidence for the defendant; Sto. Eq. Pl., sec. 849a; 2 Sto. Eq. Jur., secs. 1528, 1529; 5 Pet., 99; 17 Pet., 128; 1 How., S. C., 134; and must be disproved by two witnesses, or one witness and corroborating circumstances. 3 Y., 513; 5 Hay., 243; 5 Y., 452; 7.Y., 155; 10 H., 73; 5 Hum., 370; 3 Head, 175; 2 Cold., 64. And this is recognized by the same court, at this very term, in Sappington v. Rutherford, 3 Hay., 273.
If the court really intended to lay down principles in conflict with the well-settled rules of equity, repeatedly recognized by themselves, we shall have to give them the benefit of the "circumstances of the country and state of legal practice," which they themselves conceded to the bar in Armstrong v. Thompson, 3 Hay., 127; and Click v. Gillespie, 4 Hay., 4. — ED.